UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

_____

| In Re:<br><br>**NIKKI Y. MARCOVITZ,**<br><br>Debtor. | **Bankruptcy Case<br>No. 10-42215-JDP** |
|---|---|

_____

**MEMORANDUM OF DECISION**
_____

**Appearances:**

    Rocky Wixom, WIXOM LAW OFFICE, Idaho Falls, Idaho, Attorney for Debtor.

    Fred Cooper, Idaho Falls, Idaho, Attorney for Robert Marcovitz.

    Noah Hillen, MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED, Boise, Idaho, Attorney for KeyBank N. A.

*Introduction*

    This case presents an interesting mix of family law, the homestead exemption, and a bankruptcy debtor's rights to avoid liens that impair that

MEMORANDUM OF DECISION – 1

exemption.

The matter before the Court is chapter 7[1] debtor Nikki Marcovitz's ("Debtor") Motion to Avoid Judicial Liens, Dkt. No. 53. Interested party Robert Marcovitz ("Marcovitz"), and secured creditor Key Bank objected to the motion and filed affidavits to support their respective objections. Dkt. Nos. 54 – 57. The Court heard oral argument on the motion on August 31, 2011, and thereafter took the issues under advisement. Dkt. No. 61.

The Court has considered the submissions of the parties, the testimony presented, the arguments of counsel, as well as the applicable law, and issues the following decision. This Memorandum constitutes the Court's findings of fact and conclusions of law, and resolves the motion. Fed. R. Bankr. P. 7052; 9014.

*Facts*

In approximately 2006, during Debtor's marriage to Marcovitz, they built a home in Idaho Falls ("Home"). The Home was worth

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 2

approximately $675,000 when it was completed. Debtor and Marcovitz had financed the construction loan from Key Bank, which they later converted to a long-term mortgage. Key Bank holds a deed of trust on the Home to secure the loan.

The marriage was unsuccessful, and at some point, a divorce action was commenced. In July 2009, Marcovitz was removed from the Home pursuant to a no contact order issued by a Bonneville County magistrate judge on July 20, 2009. Ex. 100. The no contact order remained in effect until July 29, 2011. *Id*.

The divorce proceedings were protracted, and on February 1, 2010, an order was issued by the state court judge entitled "Decision and Order Regarding House Payment" ("House Order"). Ex. 101. In it, Debtor was ordered to vacate the Home, and Marcovitz was permitted to move in. *Id*. Marcovitz was instructed to bring delinquent house payments current and to pay child support to Debtor. The House Order directed that the Home be sold. *Id*. Although Marcovitz was permitted to move into the Home pursuant to the magistrate judge's order, he apparently has never done so.

MEMORANDUM OF DECISION – 3

He has been making the mortgage payments to Key Bank.

Debtor moved out of the Home on February 20, 2010, and lived for some time with a friend. She now has her own apartment, but would like to move back into the Home until it is sold. She testified that she never wanted to move out of the Home at any time, and that she believes the Home will be easier to sell if she is living in it. Debtor thinks she can make the mortgage payments, although she may have to work two or three jobs to do so. To accomplish this, Debtor would need to have the House Order amended by the state court, as it remains in effect at present. Debtor did not record either a Declaration of Homestead or a Declaration of Non-Abandonment on the Home.

On December 15, 2010, Debtor filed a chapter 7 bankruptcy petition. Dkt. No. 1. Debtor listed the Home as an asset on schedule A with a value of $675,000, and later claimed it exempt as her homestead on amended schedule C. Dkt. Nos. 22, 27. Debtor listed the amount of the outstanding mortgage balance due on the Home as $275,000. On July 6, 2011, Debtor filed a Motion to Avoid Judicial Liens, Dkt. No. 53, seeking to cancel four

MEMORANDUM OF DECISION – 4

separate judgment liens that had attached to the Home, in order of priority:

1. Creditor: S & S Electric
   Amount: $38,551.95
   Case No. CV-2006-7242
   Instrument No. 1275440, dated Aug. 22, 2007

2. Creditor: Gaffney Law Office
   Amount: $6,648.28
   Case No. CV-2008-7984
   Instrument No. 1331930, dated May 7, 2009

3. Creditor: Marco, Inc.
   Amount: $410,932.60
   Case No. CV-2009-3787
   Instrument No. 1342486, dated Aug. 25, 2009

4. Creditor: Key Bank
   Amount: $375,529.30
   Case No. CV-2009-7037
   Recording No.: 1355893, dated May 17, 2010

(hereinafter "S & S", "Gaffney", "Marco" and "Key Bank" liens, respectively). *Id*. The Key Bank judgment lien at issue apparently secures a line of credit used for Marcovitz' business. Debtor estimates the Home is valued at between $400,000 and $500,000 in today's real estate market, and it will likely take a year or more to sell it.

MEMORANDUM OF DECISION – 5

*Conclusions of Law and Disposition*

Debtor relies upon § 522(f) to avoid the liens attached to the Home. Section 522(f)(1) provides that a debtor:

> may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is-
> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5)[.]

The purpose of § 522(f)(1) is to provide relief for an overburdened debtor and protect his or her exemptions. *Culver, LLC v. Chiu (In re Chiu)*, 304 F.3d 905, 908 (9th Cir. 2002) (quoting *Farrey v. Sanderfoot*, 500 U.S. 291, 297-98 (1991); *Goswami v. MTC Distrib. (In re Goswami)*, 304 B.R. 386, 392 (9th Cir. BAP 2003). In this case, the Court must initially determine whether Debtor has established her right to a homestead exemption as to the Home, and if so, whether any of the judgment liens impair that exemption.

*A. Is Debtor Entitled to a Homestead Exemption?*

MEMORANDUM OF DECISION – 6

Debtor must demonstrate that she has a valid homestead exemption in the Home or there can be no basis for lien avoidance, as there would be no exemption for those liens to impair.

The Idaho statutes provide for a $100,000 exemption in a qualifying homestead.  Idaho Code § 55-1003.  Homesteads can be established in one of two ways in Idaho.  First, automatically, by virtue of occupying the home as one's principal residence, or, second, by recording a proper declaration of homestead.  *See* Idaho Code §§ 55-1004, 55-1006.  In determining Debtor's right to an exemption, two material facts appear undisputed:  first, that Debtor occupied the Home for a number of years as her residence, but later moved out as ordered by the state court; and second, that Debtor has never executed and recorded a legally adequate homestead declaration.

The validity of Debtor's claimed exemption is determined as of the date of filing of the bankruptcy petition.  § 522(b)(3)(A); *In re Chiu*, 266 B.R. at 751; *In re McHugh*, 10.2 I.B.C.R. 51, 51 (Bankr. D. Idaho 2010).  The homestead exemption statutes are liberally construed in favor of the

MEMORANDUM OF DECISION – 7

debtor. *In re Cerchione*, 398 B.R. at 703; *In re Kline*, 350 B.R. 497, 502 (Bankr. D. Idaho 2005) (citing *In re Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001)).

Addressing the obvious first, the Court concludes that Debtor had not established a homestead by declaration. While Debtor testified that she filed a homestead declaration when she and Marcovitz initially purchased the Home, no copy of the declaration was offered into evidence, and it appears that she was referring to the declaration filed with the county tax assessor to claim a homeowner's property tax reduction. Idaho Code § 55-1004(2) provides that, in order to select a homestead from property not yet occupied, a debtor "*must* execute a declaration of homestead . . ." and properly record it. (emphasis added). Debtor has not done so here, and thus no homestead by declaration was ever established.

Whether Debtor has demonstrated an automatic homestead is a more complicated question. It is undisputed that Debtor owned and resided in the Home for several years, and thus under Idaho law, a homestead attached automatically "from and after the time the property

MEMORANDUM OF DECISION – 8

[was] occupied as a principal residence by the owner." Idaho Code § 55–1004(1).  On the other hand, it is also undisputed that Debtor vacated the Home on February 20, 2010, pursuant to the Home order.  This is problematical for Debtor because under Idaho Code § 55-1006, a homestead is presumed abandoned "if the owner vacates the property for a continuous period of at least six (6) months."  To prevent this presumption from arising, a homeowner may file a declaration of non-abandonment.  Of course, that did not occur in Debtor's case, so the Court may presume that Debtor intended to abandon her homestead exemption.  However, the statutory presumption of abandonment of the homestead is not absolute, but rather, is a rebuttable one.  *In re Capps*, 438 B.R. 668, 674 (Bankr. D. Idaho 2010); *In re Naputi*, 07.2 IBCR 33, 35 (Bankr. D. Idaho 2007) (citing *In re Koopal*, 226 B.R. 888, 891 (Bankr. D. Idaho 1998)).  Debtor bears the burden to rebut the statutory presumption that she abandoned her homestead.  *In re Naputi*, 07.2 IBCR at 35.

When a debtor's choice of homestead is in question, the focus is one of the debtor's intent. *Magic Valley Collections and Recovery, Inc. v. Salinas*

MEMORANDUM OF DECISION – 9

*(In re Salinas)*, 04.3 I.B.C.R. 110, 111 (Bankr. D. Idaho 2004). The Court has previously identified several factors it considers when determining whether a homestead has been abandoned. Those include 1) whether there is evidence of the debtor's actual intent to abandon the homestead; 2) whether the debtor asserted the homestead exemption in the bankruptcy schedules, suggesting an intent not to abandon; and 3) whether the debtor's current residence is in the nature of a short-term rental. *See Id.* at 112; *Oldemeyer v. Couch–Russell (In re Couch–Russell)*, 03.4 I.B.C.R. 230,233–34 (Bankr. D. Idaho 2004); *In re Koopal*, 226 B.R. at 892.

Concerning the first factor, there is no real evidence presented to show Debtor actually intended to abandon her homestead exemption on the Home. After the divorce action was filed, Debtor continued to reside in the Home with the parties' two minor children; she left the Home only when the state court ordered her to do so. Moreover, Debtor testified without contradiction that she would not have moved out of the Home but for the court order. On this record, the evidence does not show that Debtor intended to abandon the Home as her homestead.

MEMORANDUM OF DECISION – 10

The second factor is whether the Debtor asserted the homestead exemption in her bankruptcy schedules. In her initial schedule C filed on petition day, Debtor claimed the Home as an asset on schedule A, but did not claim it as exempt. She amended her schedule C approximately two months later, claimed the Home exempt, and has done so since that time. The is no evidence in the record to explain why Debtor did not initially claim the Home exempt in her first set of schedules.

The third factor is whether Debtor's current living arrangement is in the nature of a short-term rental. While the evidence showed that Debtor is currently living in rental housing, nothing was submitted to show the term of her rental agreement.

So did Debtor intend to abandon her homestead exemption when she vacated the house to comply with the divorce court's order? In evaluating the proof in this context, this Court has observed that "there must be some clear, unmistakable, affirmative act or series of acts indicating a purpose to repudiate ownership and right to possession. The abandonment of rights in land does not occur if the person in possession

MEMORANDUM OF DECISION – 11

leaves it with the intention of returning." *In re Salinas*, 04.3 I.B.C.R. at 112 (quoting *Goldensmith et al. v. Snowstorm Mining Co.*, 154 P. 968, 970 (Idaho 1916)).

While perhaps conflicting, on balance, the Court finds that the evidence supports Debtor's contention that she did not intend to abandon the Home as her homestead. While the statutory presumption operates in this case, the Court can find no "clear, unmistakable, affirmative act or series of acts" which indicate such an intent. To move back to the Home, Debtor would presumably have to seek an order from the state court allowing her to do so until the Home is sold. However, Debtor, a realtor, will act as the selling agent, and she estimates that it will take up to one year for the Home to sell. She believes she can make the mortgage payments, although it may take more than one job for her to do it. Regardless of whether Debtor's plan exhibits good judgment, the Court is concerned only with whether she has overcome the presumption of abandonment of her automatic exemption in the Home.

The Court concludes that Debtor has overcome the statutory

MEMORANDUM OF DECISION – 12

presumption of abandonment, and therefore, Debtor continues to hold an automatic homestead exemption in the Home.

### B. *Lien Avoidance Pursuant to § 522(f).*

Having decided that the Home is exempt as Debtor's homestead, the Court must next consider whether the judgment liens impair the exemption.

This Court has previously held that, "under § 522(f)(1), a debtor may avoid a lien if three conditions are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien." *In re Ashcraft*, 415 B.R. 428, 430 (Bankr. D. Idaho 2008) (citing *In re Chiu*, 304 F.3d at 908). Debtor has the burden of proving she is entitled to lien avoidance under § 522(f)(1)(A). *Estate of Catli v. Catli (In re Catli)*, 999 F.2d 1405, 1406 (9th Cir. 1993).

There was almost no evidence submitted at hearing concerning the details of the four liens at issue. For example, there is little information in the record to establish that the liens are indeed judgment liens. Debtor's

MEMORANDUM OF DECISION – 13

post-hearing brief contains civil case numbers, as well as recording instrument numbers, for the liens. In addition, Debtor testified somewhat concerning the Key Bank, Marco and Gaffney liens, her discovery of them, as well as their source. The Court heard no testimony, nor does it have any information on the S & S lien, although Debtor's brief indicates that a "'Release of judgment by discharge in bankruptcy' was filed with the court on February 10, 2010[,] as instrument # 1356004 but no motion and order avoiding the lien on record." From this statement, it is unclear whether S & S has released the lien on the Home. Regardless, because Debtor has represented that all four liens are judicial liens, and because she included case numbers and recording instrument numbers, it appears that each of the liens are judicial liens, and have been recorded in Bonneville County, at which time each lien would have "fixed" as against the Home. Idaho Code § 10-1110 (in order for a judgment to create a lien under Idaho law, the judgment must first be recorded); § 101(36) ("judicial lien" defined as a "lien obtained by judgment."); *In re Ashcraft*, 415 B.R. at 435–36 (explaining that a lien resulting from the recording of a judgment in county real

MEMORANDUM OF DECISION – 14

property records is a judicial lien).

The remaining issue, then, is whether any of the four liens impairs Debtor's homestead exemption. This analysis is necessarily founded upon a determination of the value of the Home. For purposes of lien impairment, "value" is defined in § 522(a)(2) as the "fair market value [of the Home] as of the date of the filing of the petition."

There are several potential values in play on this record. Initially, when Debtor filed her schedules, she listed the value of the Home at $675,000. However, she also testified that this figure represented the value when the Home was built in 2006. When Debtor and Marcovitz began their divorce proceedings in 2009, Debtor utilized her experience as a realtor and revalued the Home using her knowledge of the Home's condition and amenities, the surrounding area, as well as information from comparable sales and similar houses on the market for sale at the time. She did not testify of what her assessment of the value of the Home was in 2009, but testified only that the prices have dropped since 2009, and that today Debtor would be "lucky" to be able to sell the Home for

MEMORANDUM OF DECISION – 15

$400,000 – 500,000.  As it is Debtor's burden to specifically demonstrate the value of the Home in an exemption impairment determination, because the rights of her creditors are potentially impacted by this motion, and because the Court has no better information before it, the Court will assign the value of the Home at the high end of Debtor's estimation:  $500,000.

Section 522(f) provides a mathematical formula to determine whether a lien impairs an exemption.  That section provides:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of --
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

Thus, under this statute, the total amount of the lien, the mortgage, and Debtor's homestead exemption, are compared to the value of the Home in order to determine to what extent, if any, the lien impairs

MEMORANDUM OF DECISION – 16

Debtor's homestead exemption.  *In re Webb*, 03.1 IBCR at 27; *In re Taylor*, 03.2 IBCR at 133.  This calculation must be performed as to each target lien independently, and in order of reverse priority.  § 522(f)(2)(B) ("[i]n the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens."); *In re Hanger*, 217 B.R. 592, 595 (9th Cir. BAP 1997) ("Applying the formula requires that the liens be subtracted in order of reverse priority . . . .").

The most junior of the judgment liens is that of Key Bank.  Here, the sum of the applicable homestead exemption ($100,000), the mortgage balance ($275,000), the S & S lien ($38,551.96), the Gaffney lien ($6,648.28), the Marco lien ($410,932.60), and the Key Bank judgment lien ($345,529.30) equals $1,176,662.10.  This amount far exceeds the fair market value of the Home ($500,000),  and thus Key Bank's lien may be avoided in its entirety.

Repeating the calculation for the Marco lien, the Court must add the homestead exemption, the mortgage, the S & S, Gaffney and Marco liens,

MEMORANDUM OF DECISION – 17

which yields a sum of $831,132.84, a sum which also exceeds the fair market value of the Home. To determine the amount of the lien which impairs Debtor's homestead exemption, the sums of the exemption amount, the mortgage, the S & S lien and the Gaffney lien must be totaled: $320,200.24. Subtracting this figure from the value of the home, $500,000, leaves $179,799.76 worth of equity in the Home to support the Marco lien without impairing the homestead exemption. As such, the amount of the Marco lien above that figure will be avoided; $410,932.60 – 179,799.76 = $231,132.84. Thus, the Marco lien will be avoided in the amount of $231,132.84.

The Gaffney and S & S liens can not be avoided under § 522(f), because Debtor has equity in the Home to support those liens without impairing Debtor's homestead exemption. As to the Gaffney lien, the amount of the homestead exemption, the mortgage, the S & S lien and the Gaffney lien total $320,200.24. Because this amount is less than the fair market value of the Home, the Gaffney lien does not impair Debtor's homestead exemption. Likewise, the homestead exemption, the mortgage

MEMORANDUM OF DECISION – 18

and the S & S lien total $313,551.96, which is also less than the $500,000 value of the home, meaning that the S & S lien does not impair Debtor's homestead exemption.

*Conclusion*

The Court concludes that Debtor holds a valid automatic homestead exemption in the Home. The Court further concludes that, under § 522(f), Key Bank's judgment is avoidable in its entirety. The lien of Marco, Inc. may be avoided, but only to the extent of $231,132.84. The Gaffney and S & S judgment liens do not impair Debtor's homestead exemption and are not subject to avoidance.

Counsel for Debtor is instructed to submit a proposed order, consistent with this decision and conforming to LBR 4002.3(a), for entry by the Court. Counsel for Marcovitz and Key Bank shall approve the form of the order.

MEMORANDUM OF DECISION – 19

Dated: October 24, 2011

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 20